UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES BEASLEY, et al.,

        Plaintiffs,

                                  Case No. 13-CV-12349

v.

                                  HON. MARK A. GOLDSMITH

UNUM LIFE INSURANCE CO., et al.,

        Defendants.

_____/

## OPINION AND ORDER
## (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 26); AND (2) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 25)

### I.  INTRODUCTION

In this disability-benefits case brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., Plaintiffs James and Roberta Beasley allege that James Beasley is entitled to lifetime disability benefits.  Before the Court are Plaintiffs' motion for partial summary judgment (Dkt. 25) and Defendants' motion for summary judgment (Dkt. 26).  Because oral argument will not aid the Court, the motions will be decided based on the parties' briefing.  See E.D. Mich. L.R. 7.1(f)(2).  For the reasons explained fully below, the Court grants Defendants' motion for summary judgment and denies Plaintiffs' motion for partial summary judgment.

### II.  BACKGROUND

In 1979, James Beasley stopped working after being diagnosed with Limb Girdle Muscular Dystrophy, and Defendants began paying disability benefits under an ERISA-governed

disability policy.[1]  In 1990, Defendants terminated benefit payments, because Beasley failed to provide his tax returns to Defendants.  Plaintiffs James and Roberta Beasley sued Defendants, seeking reinstatement of Beasley's disability benefits.  See Beasley, et al. v. Unum Life Ins. Co., et al., No. 94-70149-LPZ, 7/31/1995 Op. & Order at 2 (E.D. Mich.) ("Beasley I") (Dkt. 33-3).

In Beasley I, as in this case, neither party had a copy of the original disability policy.  The parties stipulated in Beasley I that the terms of a specimen policy controlled.  Relying on the terms of the specimen policy, Plaintiffs argued that Defendants wrongfully terminated Beasley's disability benefits.[2]  In 1995, the Court, per the Honorable Lawrence Zatkoff, ruled in favor of Plaintiffs and ordered Defendants to resume making monthly benefit payments under the terms of the policy.  See Beasley I, 7/31/1995 Op. & Order at 5-6 (granting Plaintiffs' motion for partial summary judgment, finding that Defendants termination of benefits was unreasonable); Beasley I, 12/14/1995 Op. & Order at 9 (granting Plaintiffs' motion for summary judgment on the issue of damages) (Dkt. 33-9).  In rendering these decisions, the Court cited to, and relied upon, the terms of the specimen policy.  See Beasley I, 7/31/1995 Op. & Order at 4-5; Beasley I, 12/14/1995 Op. & Order at 3-4.  Defendants complied with the judgment and resumed payment of continuous monthly benefits to Beasley until May 25, 2007.

One of the "General Provisions" of the specimen policy, which was not at issue in Beasley I, provides:

---

[1] Any references to "Beasley" contained within this opinion are to Plaintiff James Beasley, not Plaintiff Roberta Beasley.

[2] Plaintiffs attached a copy of the specimen policy to their motion for summary judgment, see Specimen Policy, Ex. A to Pls. Mot., at 29-44 (cm/ecf pages) (Dkt. 33-1), and attached a copy to their motion for partial summary judgment with respect to attorney fees and costs, prejudgment interest, and amount of benefits (Dkt. 33-4).

TERMINATION OF INSURANCE: All insurance of any employee under this Policy shall cease at the earliest of the following times:

> (1)    Upon termination of this Policy;

> (2)    On the date termination of employment in the class of employees eligible for insurance hereunder occurs. Cessation of active work by an employee shall be considered termination of employment, except that if absence from active work results from temporary lay-off or leave of absence employment may, for the purpose of insurance under this Policy, be deemed to continue until terminated by the Policyholder, but in no case beyond the end of the Policy month following the Policy month in which such lay-off or leave of absence commenced;

> (3)    On the date the employee attains his sixty-fifth birthday.

See Specimen Policy at 32 (cm/ecf page) (Dkt. 26) (emphasis added). Further, the "Group Long Term Disability Employee Insurance" section of the specimen policy, which also was not at issue in Beasley I, states:

> Upon receipt of proof that any employee, while insured under this Policy shall have become totally disabled by injury or sickness, and requires the regular attendance of a legally qualified physician, the Company will pay the employee a Monthly Benefit, as provided in this Policy, less any applicable reduction as provided under the section entitled "Monthly Benefit Reduction", during the continuance of such disability for a period not exceeding the Maximum Benefit Period stated in the Application, except that (a) no benefits will be payable for the Elimination Period, and (b) an employee who is disabled on his 65th birthday will have his benefit payments terminated on the earliest of the following dates:

> > (1)    his 65th birthday if he has received benefit payments for 12 or more months for his current disability,

> > (2)    on the date he has received 12 monthly benefit payments for his current disability.

3

See id. at 33 (cm/ecf page) (emphasis added).

In a letter dated April 11, 2007, Defendants informed Beasley that his benefits would cease on May 25, 2007, the date on which he turned 65. See Unum Letter at 39 (cm/ecf page) (Dkt. 26). Based on the foregoing provisions of the specimen policy, Defendants terminated benefit payments to Beasley, effective May 25, 2007. Plaintiffs filed this suit on May 28, 2013, six years after Beasley's benefits ceased.

### III. STANDARD OF DECISION

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a summary judgment motion,

> credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Thus, the facts and any inferences that can be drawn from those facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Biegas v. Quickway Carriers, 573 F.3d 365, 373 (6th Cir. 2009) (quotation marks and brackets omitted).

When a defendant seeks summary judgment, the defendant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation marks omitted). "To withstand summary judgment, the nonmoving party must present sufficient evidence to

create a genuine issue of material fact." Humenny v. Genex Corp., 390 F.3d 901, 904 (6th Cir.
2004).  The opposing party "may not rely on the hope that the trier of fact will disbelieve the
movant's denial of a disputed fact but must make an affirmative showing with proper evidence in
order to defeat the motion." Alexander v. CareSource, 576 F.3d 551, 558 (6th Cir. 2009)
(quotation marks omitted).  A mere scintilla of evidence is insufficient; rather, "there must be
evidence on which the jury could reasonably find for the [nonmovant]." Anderson, 447 U.S. at
252.

## IV.  ANALYSIS

### 1.  Burden of proof regarding the existence, terms, and entitlement to benefits of a controlling disability policy

As an initial matter, Plaintiffs argue in their motion for partial summary judgment that
Defendant Unum, as an ERISA fiduciary that failed to maintain a copy of the original disability
policy, bears the burden of establishing the terms and conditions of that policy.  Pls. Br. at 1, 5
(Dkt. 25).  Plaintiffs contend that, without proof that the original disability policy contained a
termination-of-benefits provision, Beasley should be entitled to lifetime benefits.  Id. at 2.  In
support of this proposition, Plaintiffs argue that the burden-shifting regime for an employer's
failure to maintain records under 29 U.S.C. § 1059 should apply with equal force to ERISA
fiduciaries.  Id. 4-5.

Plaintiffs have provided no controlling authority in support of the proposition that an
insurance company bears the burden of proof when the original disability policy has been lost
through no fault of the insured.  In the absence of such authority, the Court is unwilling to depart
from the established jurisprudence requiring a plaintiff to prove coverage and entitlement to
disability benefits, even in the case of a lost policy.  See Tracy v. Pharmacia & Upjohn Absence

Payment Plan, 195 F. App'x 511, 516 n.4 (6th Cir. 2006) (noting that the plaintiff bears the burden of proof in an ERISA benefits case); Rose v. Hartford Fin. Servs. Grp., Inc., 268 F. App'x 444, 452 (6th Cir. 2008) (same).[3]  Because Plaintiffs bear the burden of proof to establish policy terms, their motion for partial summary judgment — premised on Defendants bearing that burden — must be denied.

Regarding Defendants' motion for summary judgment, Defendants argue that Plaintiffs have failed to prove the existence and terms of any controlling policy, other than the specimen policy introduced in Beasley I.  Defs. Br. at 9 (Dkt. 26).  The Court agrees with Defendants. Plaintiffs failed to adequately address Defendants' argument on this point in their response, and Plaintiffs have failed to produce any evidence to suggest that a policy other than the specimen

---

[3] This general rule has been applied in the context of "lost" insurance policy cases outside of the ERISA context, as well.  See Star Oil Co., Inc. v. Aetna Cas. & Sur. Co., No. 93-CV-72686, 1995 WL 875597, at *3 (E.D. Mich. June 14, 1995) ("In a 'lost policy' case such as this, the plaintiff-insured is required to establish the policy's existence and terms by a preponderance of the evidence."); Century Indem. Co. v. Aero-Motive Co., 254 F. Supp. 2d 670, 679-680 (W.D. Mich. 2003) ("Under Michigan law, an insured seeking to enforce an insurance policy has the burden of proving the existence and terms of coverage in the policy.  In the case of a lost policy, the insured must still prove the existence of coverage and the terms and existence of that coverage by a preponderance of the evidence. . . .  To sustain its burden in a 'lost policy' case, an insured must present secondary evidence establishing both the issuance and terms of the policy, including secondary evidence establishing both the issuance and terms of the policy, including the named insured; the period of coverage; the types of coverage; and the limits of coverage." (citations omitted) (emphasis added)); see also Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002) (recognizing that an insured is required to establish the existence and terms of a "lost" insurance policy, but declining to decide the appropriate evidentiary standard); Boyce Thompson Inst. for Plant Research , Inc. v. Ins. Co. of N. Am., 751 F. Supp. 1137, 1140 (S.D.N.Y. 1990) ("Because lost insurance instruments are a common problem, a party seeking to recover upon a lost instrument must prove its former existence, execution, delivery and contents by clear, satisfactory and convincing evidence."); 17A Steven Plitt et al., Couch on Ins. 3d § 255:7 (2014) ("The burden of proving the existence and terms of the alleged policy fall on the party which asserts them as a basis for some right or recovery, usually the insured or a beneficiary.").

policy applies in this case.  As the only conceivably controlling policy present in this case, the Court turns to the clear and unambiguous language of the specimen policy to resolve the parties' dispute.

As set forth above, the Group Long Term Disability Employee Insurance section of the specimen policy states, in relevant part, that a disabled employee, having reached the age of 65, "will have his benefit payments terminated on the earliest of the following dates: (1) his 65th birthday if he has received benefit payments for 12 or more months for his current disability, (2) on the date he has received 12 monthly benefit payments for his current disability."  Specimen Policy at 33 (cm/ecf page).  Likewise, the General Provisions of the specimen policy clearly state that "[a]ll insurance of any employee under this Policy shall cease. . . [o]n the date the employee attains his sixty-fifth birthday."  Id. at 32 (cm/ecf page).

Plaintiffs do not contest, and the Court finds, that those terms are unambiguous. Moreover, it is undisputed that: (i) Beasley's 65th birthday was on May 25, 2007, and (ii) Beasley has been receiving benefit payments based on his disability for greater than 12 months at the time of his 65th birthday, because those payments began in 1979.  Therefore, the Court finds that there is no genuine issue of material fact that, under the terms of the specimen policy, Defendants had the right to terminate Beasley's disability-benefit payments on Beasley's 65th birthday, effective May 25, 2007.

Accordingly, the Court grants Defendants' motion for summary judgment.

**2.  Applicability of the doctrine of judicial estoppel**

Separate and apart from the burden-of-proof issue, Defendants argue that Plaintiffs are bound by the terms of the specimen policy under the doctrine of judicial estoppel.  Defs. Br. at 5-

7.  The Court agrees with Defendants.

The equitable doctrine of judicial estoppel precludes "a party who successfully assumed one position in a prior legal proceeding from assuming a contrary position in a later proceeding." Mirando v. U.S. Dep't of the Treasury, 766 F.3d 540, 545 (6th Cir. 2014) (citing New Hampshire v. Maine, 749 U.S. 742, 749 (2001)); accord Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 170 (2010); see also 18B Charles A. Wright, et al., Fed. Practice & Procedure § 4477 at 553 (2d 2002) ("Absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").  In order to prevent a party from proverbially "trying to have their cake and eat it too," judicial estoppel seeks to preserve "the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship."  Lucier v. City of Ecorse, 601 F. App'x 372, 377 n.2 (6th Cir. 2015); Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, 546 F.3d 752, 757 (6th Cir. 2008) (same); see also Trimas Corp. v. Meyers, 572 F. App'x 347, 353 (6th Cir. 2014) ("The doctrine is used only to avoid a miscarriage of justice[.]").

Although there is no precise formula for determining the proper invocation of judicial estoppel, the Supreme Court and the Sixth Circuit typically consider the following factors: (i) whether the party's later position is "clearly inconsistent with its earlier position; (ii) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (iii) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party is not estopped."  Mirando, 766 F.3d at 545 (quoting New Hampshire, 532 U.S.

8

at 750-751); <u>accord</u> <u>Zedner v. United States</u>, 547 U.S. 489, 504 (2006).  These factors are merely considerations and are not alone dispositive.  <u>See</u> <u>Pavelka v. Allstate Property & Cas. Ins. Co.</u>, __ F. Supp. 3d __, 2015 WL 1221393, at *4 (E.D. Mich. Mar. 18, 2015).[4]

In the present case, Defendants contend that, during the <u>Beasley I</u> litigation, Plaintiffs took the position that the termination of benefits was unreasonable and contrary to the terms of the specimen policy, which Plaintiffs had attached as an exhibit to their motion for summary judgment.  <u>Id.</u> at 6.  Defendants further claim that the Court subsequently adopted Plaintiffs' position, having found that the parties stipulated to the use of the specimen policy, and then relied on the terms of that policy in rendering a decision in favor of Plaintiffs on Defendants' termination-of-benefits decision, as well as damages.  <u>See id.</u> at 7.  Thus, according to Defendants, the doctrine of judicial estoppel should bar Plaintiffs from asserting the inconsistent position that a policy other than the specimen policy governs the present dispute.  <u>Id.</u> at 6.

In their response brief, Plaintiffs argue that the position they took in <u>Beasley I</u> is not "clearly inconsistent" with the position they are now taking in this case.  Pl. Resp. at 2 (Dkt. 28).  According to Plaintiffs, <u>Beasley I</u> dealt with a dispute over whether Defendants could reasonably deny benefits based on Beasley's failure to provide tax information, while the dispute in the present case deals with the time period during which Beasley was entitled to benefits.  <u>Id.</u>  Plaintiffs further contend that the Court is not being misled by the terms of the policy, and Defendants will not face an "unfair advantage" if the Court rejects Defendants' judicial-estoppel

---

[4] Notably, the doctrine "does not apply where the prior inconsistent position occurred because of mistake or inadvertence."  <u>Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Employees</u>, 741 F.3d 686, 698 (6th Cir. 2014).  Because there is nothing in the record to suggest that Plaintiffs' position in <u>Beasley I</u> was the result of mistake or inadvertence, this consideration does not factor into the Court's decision to apply judicial estoppel.

argument.  Id. at 2-3.

Taking issue with Plaintiffs' claim that their current position is not "clearly inconsistent" with a prior position, Defendants argue in their reply brief that judicial estoppel, which is distinct from claim preclusion and issue preclusion, does not require the exact same claim to be raised in the prior proceeding.  Defs. Reply at 2-3.  Thus, Defendants assert that any position that a policy other than the specimen policy governs Beasley's benefits would be contrary to Plaintiffs' position that the specimen policy should control the outcome of the prior termination decision. Id.  Defendants further note that, in Beasley I, Plaintiffs never claimed that another policy should apply to the termination of benefits, or that only certain terms of the specimen policy should apply.  Id. at 2.

The Court finds that all three factors for judicial estoppel have been satisfied in this case. First, Plaintiffs took the position in Beasley I that the terms of the specimen policy controlled the outcome of the dispute among the parties regarding Beasley's entitlement to disability benefits, albeit under a different provision than the one at issue in the present matter.  See Pls. Mot. for Summary Judgment, ¶¶ 4, 8, 10, 11 (Dkt. 33-1); Pls. Br. in Support of Mot., at 20, 22 (cm/ecf pages) (Dkt 33-1); Specimen Policy, Ex. A to Pls. Mot., at 29-44 (cm/ecf pages) (Dkt. 33-1); see also Pls. Partial Mot. for Summary Judgment, at 24 (cm/ecf page) (Dkt. 33-4).  By asserting the position that the specimen policy does not govern Beasley's present eligibility for disability benefits, Plaintiffs now assert a position that is clearly inconsistent with the position asserted in the prior proceedings.

The Court is not persuaded by Plaintiffs' argument that, because Beasley I dealt with a dispute over Beasley's failure to provide tax information and the current dispute concerns the

time period for receiving benefits, Plaintiffs have not taken a contrary position.  A party's position need not be so narrowly defined based on the precise issue being litigated, as Plaintiffs seem to suggest.  As the First Circuit aptly stated, the doctrine of judicial estoppel, unlike the doctrine of issue preclusion, "does not require that the issue have been actually litigated in the prior proceeding."  Thore v. Howe, 466 F.3d 173, 181 (1st Cir. 2006) (citing New Hampshire, 532 U.S. at 748-749).  While there is no dispute that the parties did not previously litigate the precise issue presented in this case, such a finding does not alter the fact that Plaintiffs took the position in the prior litigation that the specimen policy controlled the Court's disability benefits determination.  To now take the position that the specimen policy no longer controls the determination of Beasley's entitlement to disability benefits would be inconsistent with Plaintiffs' prior position.

Second, Defendants have demonstrated that Plaintiffs "succeeded in persuading a court to accept that party's earlier position."  New Hampshire, 532 U.S. at 750. A court's adoption of a party's contrary position can occur "either as a preliminary matter or as part of a final disposition."  Stephenson v. Malloy, 700 F.3d 265, 272 (6th Cir. 2012).  Here, the Court finds that the second factor has been satisfied — the Court accepted Plaintiffs' prior position and relied on the language of the specimen policy in rendering its decision in favor of Plaintiffs in the prior litigation.  See Beasley I, 7/31/1995 Op. & Order at 4 (quoting relevant language from the specimen policy regarding a party furnishing of information in rendering decision on the reasonableness of Defendants' termination decision); Beasley I, 12/14/1995 Op. & Order at 4 (recognizing that the parties stipulated to the use of the specimen policy for the Court to use in its analysis).

11

Third, judicial estoppel seeks to prevent a party from engaging in "cynical gamesmanship." Lewis v. Weyehaeuser Co., 141 F. App'x 420, 424 (6th Cir. 2005) (quoting New Hampshire, 532 U.S. at 749). This is especially so if the contradiction is made "to the prejudice of the [defendant] who has acquiesced in the position formerly taken by [the plaintiff]." Lorillard Tobacco Co., 546 F.3d at 757. In this case, the parties stipulated to the Court's use of the specimen policy in reaching its decisions on reasonableness and damages. Defendants continued to provide Beasley with disability benefit payments for nearly 12 years, in accordance with the Court's earlier opinions. Plaintiffs would gain an unfair advantage, and Defendants would be prejudiced, if Plaintiffs were permitted to argue that Beasley was entitled to benefits under the terms of the specimen policy in the first instance, but then argue that unfavorable terms in the specimen policy do not warrant termination of benefits in subsequent litigation. This is precisely the "have your cake and eat it, too" outcome that judicial estoppel is meant to avoid.

Therefore, the Court concludes that the doctrine of judicial estoppel prevents Plaintiffs from asserting the position that the specimen policy does not apply in this case.

For the reasons discussed above, the Court finds that there is no genuine issue of material fact that, under the terms of the specimen policy, Defendants had the right to terminate Beasley's disability-benefit payments on Beasley's 65th birthday.

Accordingly, the Court grants Defendants' motion for summary judgment.[5]

## V. CONCLUSION

---

[5] Defendants also argue that the doctrine collateral estoppel warrants summary judgment in their favor. See Defs. Br. at 7-8. Because the Court finds that Defendants are entitled to summary judgment on other grounds, it refrains from deciding this additional argument.

For the reasons set forth above, the Court grants Defendants' motion for summary judgment (Dkt. 26) and denies Plaintiffs' motion for partial summary judgment (Dkt. 25).

SO ORDERED.

Date:  August 20, 2015                           s/Mark A. Goldsmith
       Detroit, Michigan                          MARK A. GOLDSMITH
                                                  United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 20, 2015.

                                                  s/Carrie Haddon
                                                  Case Manager